## Eva Goldstein

*v.*

## Hyman Goldstein et al.

[Submitted June 6th, 1916.   Decided July 14th, 1916.]

1. A betrothal and a nuptial contract or certificate, made according to the Hebrew faith, whereby the husband bound himself and his heirs for the payment or contribution to the dower of an amount equal to that brought in by the wife, and as security therefor pledged all of his present and after-acquired possessions, without disclosing to whom or when the dowry was to be paid, was not an enforceable obligation between the husband and wife.

2. Such contracts created no trust on the part of the husband in favor of the wife.

3. Under such contracts, imposing obligations on the husband by operation of the laws governing the Hebrew race, of which obligations the contract was only partly evidential, and where such laws and customs were not put in evidence, the court could not take judicial notice of them, even though they were in concrete form and it knew where to find them.

4. Under the common law, the wife's property passed to the husband by virtue of the marriage contract, her compensation being her dower.

---

*Mr. Henry S. Alvord,* for the complainant.

*Mr. Albert S. Woodruff,* for the defendants.

BACKES, V. C.

This suit is in the nature of a bill for the specific performance of a contract. It is filed by a wife against her husband, for the restitution of her dowry and paraphernalia. The parties are Hebrews, and were married according to the laws of that faith, September 8th, 1914. They lived together until the following August, when the husband compelled his wife to leave him. The marriage was preceded by a betrothal contract, the pertinent features of which read as follows:

"First: The afore-mentioned bridegroom binds himself to wed the aforesaid bride as his wife with a ceremony of canopy and sanctification (Chupah and Kidushi) according to the rite of Moses and Israel. They shall not have any secrets nor deceive one another in any matter concerning money and they shall share in their possession, just portion and portion as is the universal custom.

"And the bridegroom binds himself to give presents to the bride according to the custom.

"The aforementioned bride obligates herself to bring in as dowry the sum of $5,000 and clothing, beddings and trousseau, according to the manner of the prosperous.

"All this is entered into with the full and conscious understanding, and in the best manner according to the ordinances of our sages, and according to the law of the land, with hand-clasping and after a thorough reading, with a 'Kinyan' (formality of binding an agreement), to take effect immediately, entered into without coercion, never to be revoked, with a valid 'Kinyan' (formality of binding agreement)."

It was further stipulated that the wedding was to take place on or before September 10th, and that the penalty for a violation was $10,000.

Upon the execution of this contract, the father of the wife obtained a certificate of deposit for the amount named, from a trust company, made out in the name of the husband and wife, payable ten days after the marriage. The amount of the dot

was arrived at only after considerable discussion and negotiation by the two men. The husband held out for $10,000, while the father insisted upon the figure which was finally agreed upon. This sum, the husband says, was given to him as an unconditional gift, and I am inclined to believe that that was his understanding as well as the understanding of all concerned. At the wedding ceremony, he, however, entered into a contract, the printed form of which, in the Aramaic dialect, literally translated, reads thus:

"On the day and date aforementioned, and in the year aforesaid, since the creation of the world; in accordance with our computation of time * * * in the said city (it is set forth) how this man, aforementioned, said unto the aforesaid maiden, 'Be thou my wife according to the law of Moses and of Israel, and I will labor (to maintain thee) honorably and to nourish and sustain thee, according to the practice of the Jewish men who labor for the honorable maintenance of their wives whom they truly nourish and sustain; and I grant thee as spousal gift the aforementioned which is due to thee; I also bind myself to provide thee with food, raiment, and all thy necessaries, also to visit thee after the manner of the world.'

. "Thereupon the said worthy maiden consented to become his wife and brought unto him the dowry given her by her family consisting of gold and of silver, of ornaments and of garments, of furniture and of bedding, all of which this man aforementioned, the bridegroom, to wit, accepted in the sum aforementioned * * * this man aforesaid * * * to wit the bridegroom, also agreed to add thereto and to give her a sum to equal the sum mentioned above * * * the grand total being the sum aforementioned * * * this sum aforementioned * * * the bridegroom, to wit, said 'By virtue of the certificate I hereby accept the responsibility to the integrity of this dowry and of my addition thereto, for myself, and my heirs, that will follow me, to compensate with the most valuable of my estate and possessions, which I do possess, anywhere beneath the sky * * * that which I have bought already and that which I may buy hereafter—whether of land or of goods and chattels, all of which I hereby pledge as security and hold them subject to the collection of the sum set forth in this certificate, to wit, the amount of this dowry and of my addition thereto; even pledge the very cloak I wear on my shoulders in payment, during my lifetime and after my lifetime, from this day forever.'

"Thus did this man aforementioned, the bridegroom, to wit: take upon himself, in accordance with this certificate, the responsibility for this dowry and the addition thereto. This certificate is subject to strict enforcement the same as all certificates of dowrys and the addition thereto that is customary among the daughters of Israel, which are drawn up according to the form prescribed by our Sages of blessed memory and which is unlike a voucher or a blank certificate.

"We have purchased the right of this man, namely, the bridegroom and have vested it in this worthy woman aforementioned—namely this maiden, to all that is written and set forth in the aforegoing—by means of an article with which the right and title may be properly purchased; all of which is thus established and remains in force."

I question very much whether any of the parties understood the contract in the sense now sought to be given to it by the wife, and especially that portion which seems to bind the husband to contribute to the dowry an amount equal to the sum brought in by the wife, because it appears to have been no part of the verbal arrangement.

The theory of the bill is that the betrothal and nuptial contracts created a trust, held by the husband, in favor of the wife, and the prayer is that the husband be removed and a new trustee appointed, and that he be decreed to pay over the funds and deliver up the paraphernalia, and that the trust be impressed as a lien upon the real estate in which the dowry was invested. The documents certainly disclose no contractual obligations enforceable between husband and wife, and of and in themselves create no trust in favor of the wife. According to the nuptial contract, the husband bound himself and his heirs for the payment of the dowry and in addition and as security he pledged all of his then and after-acquired possessions. To whom and when, the dowry was to be paid, is not disclosed, and in this respect, whatever obligations were imposed upon the husband arose by operation of the laws governing the Jewish race, of which obligations the contract is only partly evidential. For its interpretation, we must resort to the laws of Israel and the customs as prescribed by the sages spoken of in the contract. These laws and customs were not put in evidence, and we cannot take judicial notice of them, even though they were in concrete form and we knew where to find them. The practice among the children of Israel varied from time to time, as history discloses. At one time the bridegroom named a price or ransom to the father of the bride; Abraham sent costly gifts to Rebekah when he bethrothed her, and Jacob served Laban fourteen years for his two daughters; while on the other hand, Solomon received from Pharaoh, his father-in-law, a city as the

portion of the princess. *4 Jewish Encyc. 645.* What the present state of the Rabbinic law is in relation to this sort of dowry, we are not informed, and whether the dowry is a trust enforceable under our system of jurisprudence, need not now be passed upon. We have nothing analogous in our judicial polity, and upon the documents in the case standing alone, no recovery can be had by force of our laws or by our judicial methods. Louisiana is the only state in the Union in which these conventions are recognized and enforced, and there by the code founded upon the Spanish and French laws. They are also in common practice in Continental Europe. In the common law of England they are unknown. Until modified by statute, the wife's property, under the common law, passed to the husband by virtue of the marriage contract. Her compensation was her dower fixed at a one-third interest for life in her husband's realty at the time of his death, and we are of the opinion that her right to alimony, in a measure, springs from the same source.

As gathered from the books which have been examined, relating to contracts of this kind, the husband owns the dowry and is entitled to the usufruct during his lifetime, and may dispose of them for that period. This is according to the code of Louisiana. The husband may, however, be called upon to account for the dowry in the event of a divorce or judicial separation. Otherwise, his estate must respond at his death only. This also seems to be the Jewish law, and if this be so, the present action is prematurely brought. The complainant has not been divorced nor judicially separated.

Diligent search by counsel and the court has failed to discover a single case in England or this country, where the common law prevails, where a nuptial contract like the present one, was sought to be enforced. This may be attributed to the difficulty of establishing a trust recognizable by our law, or to the fact that the Jewish people settled difficulties of this kind in the Rabbinic courts.

The claim for the paraphernalia was not pressed on the argument, the only subject debated being the dowry, and it is, therefore, to be regarded as waived.

The relief prayed for will be denied.